## Commonwealth v. Heyman

*R. Eric Simon*, for Commonwealth.
*Harold L. Roth*, for defendant.

McCREARY, P. J., August 31, 1954.—On Sunday, April 25, 1954, an information, for violation of section 207(*a*) of The Vehicle Code of May 1, 1929, P. L. 905, was made against defendant for an offense alleged to have happened on April 10, 1954. The information reads in part as follows:

"Before me, the subscriber, one of the Justices of the Peace in and for the Township of Harmony, County of Beaver and State of Pennsylvania, personally

appeared one Harold G. Rice—State Policeman duly sworn accordingly to law, deposes and says that on or about the 10th day of April A. D. 1954, one Joseph Heyman of 435 Glenwood Drive Ambridge, Penna., sell a certain motor vehicle Mfg. #54131277—Title #J4666387 of Harmony Township County of Beaver and State of Pennsylvania in violation of Section 207 Sub Section "A" of the Vehicle Code of Pa., approved May 1st, 1929, and amendments thereto, by then and there selling the said vehicle, a Ford, when the said defendant did not have title for said vehicle, and did not execute or assign or deliver title for said vehicle to the purchaser which was Jerry Hooks, 1808 Duss Ave., Ambridge, Penna.—This information made on information received from Robert Hutson, 1112 4th Ave., Conway, Penna., and I believe it to be true and correct."

On the date of the hearing, May 6, 1954, defendant pled "not guilty" and a hearing was had before a justice of the peace. On May 15, 1954, defendant was adjudged guilty and was ordered to pay a fine and costs amounting to $31.11. A special allocatur was allowed by the court, and when the matter came before us for hearing on August 24, 1954, defendant, by his counsel, made a motion to quash on the ground the information was a nullity, having been executed and sworn to on Sunday when it shows on its face that the offense did not occur on that day, or in view of the State policeman.

The motion to quash must be sustained. The general rule is well stated in 50 American Jurisprudence 858-59, as follows:

"While anciently courts of justice sat on Sunday, it has long been the rule at common law, expressed by the Latin phrase Dies Dominicus non est dies juridicus, that judicial proceedings cannot be held or judicial acts performed on Sunday. While in the absence of

statute a ministerial act in connection with judicial proceedings and, according to many cases, quasi-judicial acts, such as the issuance and services of process, performed on Sunday are valid, it is the general rule of the common law that all judicial proceedings which take place on Sunday and all judicial acts performed on that day are void, irrespective of any statutory declaration to that effect. In jurisdictions where the common law prevails, the right or authority to perform any judicial act on Sunday must be derived from a statute conferring that right or authority, and a statute conferring such right should, like any other statute in derogation of the common law, be strictly construed."

Pennsylvania is one of the States where the common law prevails. Our State makes an exception, as far as Sunday observance is concerned, in cases of treason, felony or breach of the peace, but we must construe the statute providing for that exception strictly. The Act of 1705, 1 Sm. L. 25, sec. 4, 44 PS §1, provides that:

"Process Not To Be Served On Sunday.

"No person or persons, upon the first day of the week, shall serve or execute, or cause to be served or executed, any writ, precept, warrant, order, judgment or decree, except in case of treason, felony or breach of the peace; but the serving of any such writ, precept, warrant, order, judgment or decree shall be void, to all intents and purposes whatsoever; and the person or persons so serving or executing the same, shall be as liable to the suit of the party grieved, and to answer damages to him for doing thereof, as if he or they had done the same without any writ, precept, warrant or order, judgment or decree at all."

Another exception to the common-law rule is contained in section 1211 of The Vehicle Code of May 1, 1929, P. L. 905, 75 PS §741. By that section State

policemen in uniform are authorized to arrest all violators of the act on view on any day, including Sunday. This section provides (75 PS §741):

"Such employes of the Commonwealth as are designated as Pennsylvania State Policemen are hereby declared to be peace officers, and are hereby given police power and authority throughout the Commonwealth to arrest on view, on Sunday or any other day, when in uniform, without writ, rule, order, or process, any person violating any of the provisions of this act, in addition to any other power or authority conferred by law.

"Whenever an arrest is made upon view, on Sunday or any other day, under the provisions of this section, the officer making the arrest shall forthwith take the defendant before the nearest available magistrate in the city, borough, incorporated town, or township, where the alleged offense occurred: Provided, however, That where there is no substantial difference between the respective distances from the place where the alleged violation occurred to the offices of more than one magistrate, any such prosecution may be brought before any one of such magistrates, or, if there is no magistrate available in such district, then the officer shall forthwith take the defendant to such nearest available magistrate in any adjoining city, borough, incorporated town, or township, and shall make and file with the magistrate before whom the arrested person is taken, an information setting forth in detail the offense, and at once furnish a copy thereof to the person arrested.

"Any person so arrested on any day, other than Sunday, shall be given the opportunity of having an immediate hearing, or of waiving a hearing, or of giving bail; and any person so arrested on Sunday shall be given the opportunity of giving bail, which shall be accepted by the magistrate the same as on any

other day, as provided in this act, for a hearing before the magistrate to be held at a date not more than ten days from the date of such arrest, or of waiving a hearing and giving bail for his appearance in court."

In the case we are considering there was no arrest on view. The information was made "on information received" and was for an offense not committed on Sunday. This provision of The Vehicle Code is in derogation of the common law, and cannot be tortured into meaning that a State policeman has authority to perform on Sunday the judicial act of making out an information for a violation of The Vehicle Code charging an offense which occurred 15 days before.

In the case of Commonwealth v. Overton et al., 42 Pa. C. C. 446, defendant moved to quash an indictment for selling liquor without a license on the ground that the information was issued on Sunday and the hearing held the same day. The court refused to quash, holding that such an offense was a breach of the peace and hence within the exceptions set out in the Act of 1705, supra, but further held (p. 447):

"If at the trial it shall develop that a warrant was issued not for a present and open, but for a past, and perhaps secret violation, a motion in arrest of judgment in case of conviction will be available to protect the defendant's rights. The one thing that should be clear is that the Commonwealth has not by the Act of 1705 paralyzed its own agencies and enfranchised crime on Sunday to an extent that might enable criminals to escape before a warrant could be sworn out on a working day."

In the case we are considering it is clear that the judicial act of filing an information for violation of The Vehicle Code was not "for a present and open, but for a past offense."

There was absolutely no necessity for making the information on Sunday. It could have been made on

any of the days intervening between April 10th and April 24th. We are inclined to the view expressed by Mr. Justice Sharswood in the case of *Rheem v. Carlisle Deposit Bank*, 76 Pa. 132, 136-37, where he said:

"It is very important that the Acts of Assembly providing for the observance of the Lord's day, commonly called Sunday, should be enforced according to their true spirit and meaning. We are not called upon to discuss the policy of these statutes, but the legislature in the unquestionable exercise of their constitutional power have enacted that one day in seven, the first day of the week, shall be a day of rest, when all worldly employment and business shall be intermitted. By the Act of 1705, §4, 1 Smith 25, no person or persons upon the first day of the week shall serve or execute or cause to be served or executed any writ, precept, warrant, order, judgment or decree, except in case of treason, felony or breach of the peace; but the serving of any such writ, precept, warrant, order, judgment or decree shall be void to all intents and purposes whatever. And the Act of April 22d, 1794, §1, 3 Smith 177, imposes a penalty upon any person who shall do or perform any worldly employment or business whatever on the Lord's day, commonly called Sunday (works of necessity and charity excepted). It was said in Stern's Appeal, 14 P. F. Smith 450, that judicial business in civil cases, done on Sunday, is violative of the common law. The notice from the attorney of the party to the sheriff in that case was not an order within the letter of the Act of 1705, though it is so termed in the case. It was a mere notice to him to proceed according to his duty under the writ of execution already in his hands. It cannot, I think, be doubted that any other notice by party or counsel in the course of legal proceedings would be equally ineffectual. Nor would it be necessary that a suit should be actually pending. Notices are often required to fix

the liability of a party. Thus notice to a magistrate before commencing a suit against him for any act done by him in virtue of his office surely could not be served upon him on Sunday. Nor would it matter that it would have been in time if served on the following day. To fix an endorser with legal liability, a notice of non-payment is required. It is a step in the legal proceedings, though before the commencement of the suit. The party was not bound to receive or notice such a communication. It is against the spirit of the Act of 1705, to permit it to have any effect. Besides it was a part of the worldly employment or business of the teller of the bank, directly violative of the Act of 1794, an unlawful act on his part, and fell within the prohibition of that statute."

The Act of April 22, 1794, sec. 1, 3 Sm. L. 177, has been substantially reënacted in our Criminal Code by the Act of June 24, 1939, P. L. 872, sec. 699.4, 18 PS §4699.4:

We are not unaware of the legislative enactments which have authorized exceptions to this statute by allowing such sports and diversions as football, baseball and movies on Sunday when approved by the vote of the citizens in any municipality by referendum, but we are not permitted to eat away the substance of the law by judicial fiat. Until the legislature authorizes the commencement of a judicial proceeding, namely, the making of an information charging an offense in the past, as they have done for violation of The Vehicle Code on Sunday for an offense committed on Sunday, we propose to stick with the common-law rule.

Attention is called to the two latest cases in Pennsylvania on the general subject of judicial acts performed on Sunday. They are *Commonwealth v. Magaro*, 175 Pa. Superior Ct. 76, and *Commonwealth v. Prussia et al.*, 87 D. & C. 70. In both cases it will be noted that, although a search warrant for operation

of gambling devices may be obtained and served on Sunday, in both cases the information was made on the following day. In the latter case the court refused to decide whether the filing of an information on Sunday for a past offense would be a violation of the Sunday law, statutory or common. It was there said (p. 74):

"In the present case, we need not determine what the rule should be where one is served on Sunday not for a present, open and continuing violation of the law, as we have here, but for a past and secret misdemeanor. See *Commonwealth v. Overton*, 42 Pa. C. C. 446."

The question was not before the court because (1) the crime charged was a breach of the peace in that it was a misdemeanor, and (2) the offense charged was an offense committed on that very Sunday, and (3) the information was made on Monday, not Sunday.

As was said by Mr. Justice Sharswood "we must be careful not to open the door to exceptions which will fritter away the plain provisions of the law".

We hold that the execution and filing of an information is a judicial act essential to the prosecution of a criminal case and that, unless it is specifically authorized by statute, to do so on Sunday is violation of the common law and the statutes of Pennsylvania in such cases made and provided. For an interesting discussion of the whole subject see New Castle v. Casacchia, 58 D. & C. 184; Commonwealth v. Johns, 64 D. & C. 35. The information, having been filed illegally, is a nullity and the summary judgment based thereon is likewise without foundation.

Accordingly, we make the following

*Order*

Now, August 31, 1954, defendant's motion to quash the information is granted and defendant is discharged from his recognizance without day.