The Wayne Pike Company v. Hammons *et al.*

Filed May 25, 1891; petition for a rehearing overruled Oct. 17, 1891.

---

No. 15,117.

The Wayne Pike Company v. Hammons et al.

Pleading.—*Supplemental Complaint.*—*Demurrer.*—A motion to strike out a supplemental complaint may properly be overruled.

Same.—*Demurrer.*—Sustaining a demurrer defective in form to a pleading which is wholly insufficient is not available error.

Corporation.—*Misappropriation of Corporate Funds by Officers.*—*Action by Stockholder for Receiver.*—*Pleading.*—Where a majority of the directors of a corporation are charged with a misappropriation and conversion of the assets of the corporation, a complaint by a stockholder for an accounting and the appointment of a receiver need not allege that before the commencement of the action a demand was made upon the directors to bring suit in the name of the corporation.

Same.—*Conversion.*—*Interest.*—Where the secretary and treasurer of a corporation fraudulently appropriates to his own use, under the guise of salary, large sums of money belonging to the corporation, he is liable for interest on the amount so appropriated.

Same.—*Turnpike Company.*—*Refusal of Officers to Make Repairs.*—*Appointment of Receiver.*—Where the owners of the majority of the corporate stock of a turnpike company neglect and refuse to make needed repairs in the

roadway, thus rendering the property non-productive, the court may properly appoint a receiver.

SAME.—*Sale of Property.*—*Decree.*—Where a suit brought by a stockholder against a corporation and its officers merely seeks an accounting and the appointment of a receiver, a decree ordering a sale of the property is erroneous.

COURTS.—*Continuance Beyond Term.*—The adjournment of the trial of a cause which is in progress the last day of a term to a subsequent day, when the trial is again resumed, is not an adjourned term, but is a continuation of the existing term under the provisions of section 284, Elliott's Supp., and no notice is necessary.

From the Jay Circuit Court.

*D. T. Taylor, R. H. Hartford, J. B. Jaqua, J. A. Jaqua, F. Winter* and *J. B. Elam,* for appellant.

*J. M. Smith, T. Bosworth, F. H. Snyder* and *J. R. Perdieu,* for appellees.

COFFEY, J.—This was an action by the appellees, as stockholders in the Wayne Pike Company, a gravel road corporation organized under the laws of this State, against said company and Alonzo L. Jaqua, James B. Jaqua, Judson A. Jaqua, Christopher S. Arthur and Daniel Miller, as the officers of said corporation, to compel an accounting, and to obtain the appointment of a receiver.

Among other things, the first paragraph of the complaint alleges that after the construction of the gravel road the defendant Alonzo L. Jaqua became the owner of one hundred and seventy-five shares of the capital stock of said corporation; that defendant James B. Jaqua became the owner of two shares, and the defendant Judson A. Jaqua became the owner of one share of said capital stock, which shares of said stock held by them constituted a majority of the shares of stock subscribed in said corporation; that said defendants so holding said stock, conspiring together for the purpose of cheating and defrauding the plaintiffs and other holders of shares of stock in said company and to render their stock in said corporation worthless, elected

VOL. 129.—24

themselves directors of said corporation; that on the ——
day of ——, 188–, as such board, they assumed and took
the sole and exclusive control and management of said
gravel road and elected and appointed the defendant Alonzo
L. Jaqua secretary and treasurer, and the defendant James
B. Jaqua president thereof; that said defendants, having
thus conspired together to cheat and defraud the plaintiffs,
and, in pursuance of such conspiracy, having obtained pos-
session of the property of said corporation, its books, papers
and records thereto belonging, have been guilty of fraudu-
lent, illegal and oppressive acts in the management of said
corporation, as follows, to wit:

*First.* That they take all the revenues, income, profits
and earnings of said corporation, derived from the toll col-
lected thereon and therefrom, and fraudulently and illegally
appropriate the same to their own use and benefit, and
wholly refuse to permit the plaintiffs to have anything to do
or say in the management of the affairs or business of said
corporation.

*Second.* That, although the earnings of such gravel road
are largely in excess of what it takes to keep the same in re-
pair and pay the expenses of its officers and their salaries,
the said defendants (Jaqua, Jaqua and Jaqua), acting as its
officers, refuse to keep said road in repair and refuse to pay
any dividends, but appropriate the said undivided proceeds
to their own private use and benefit.

*Third.* That said defendants, acting as such officers of
said corporation as aforesaid, to further cheat and defraud
these plaintiffs, refuse and fail to keep accurate accounts of
the receipts and disbursements, and refuse to keep the books
thereof open for examination by the said plaintiffs or either
of them.

*Fourth.* That said defendants Jaqua, Jaqua and Jaqua
fraudulently conspire together, elect and keep in office
Alonzo L. Jaqua, as secretary and treasurer of said corpora-

tion for the purpose of absorbing the earnings, profits, effects and moneys belonging to such corporation.

*Fifth.* That said defendants Jaqua and Jaqua, acting as the majority of the board of directors, under such conspiracy, have from time to time since the 1st day of January, 1880, and the —— day of ————, 1888, allowed and caused to be allowed large and exorbitant sums of money to Alonzo L. Jaqua, as his salary as secretary and treasurer, aggregating in the amount of five thousand dollars, which sum of money for such salary was unreasonable and unjust and was made and ordered to be paid by them for the purpose of absorbing the earnings, proceeds, profits and moneys belonging to said corporation.

*Sixth.* That the earnings, profits and moneys have amounted to the sum of twenty thousand dollars since the 1st day of January, 1880, which sum of money has been absorbed by the said defendants Jaqua, Jaqua and Jaqua, and to each of them, for the sole purpose of cheating and defrauding these plaintiffs and the other stockholders, not herein named.

*Seventh.* That said defendants Jaqua, Jaqua and Jaqua, having conspired together as aforesaid, to cheat and defraud these plaintiffs as aforesaid, have diverted the moneys, profits and earnings belonging to said corporation for the purpose of further absorbing the same, in this, to wit: The said Alonzo L. Jaqua caused to be purchased and did purchase a large fire and burglar proof safe at and for the price of fifteen hundred dollars, which safe was not needed in the business of the corporation, and was purchased without the knowledge or consent of the stockholders or the board of directors of said corporation, and which safe has been used since its purchase by the said Alonzo L. Jaqua in his own private business.

*Eighth.* That the said defendants Jaqua, Jaqua and Jaqua refuse to allow these plaintiffs to participate in any of the business transactions of said corporation, and refuse to

make known any of the business meetings of said corporation to the stockholders, and refuse and neglected to give notice thereof to any of the stockholders, and especially these plaintiffs.

*Ninth.* That the said defendants Jaqua, Jaqua and Jaqua, having thus conspired as aforesaid to cheat these plaintiffs and the other stockholders, not named herein, refuse to permit these plaintiffs to examine any of the books or papers or accounts belonging to said corporation, but keep the same concealed and within themselves.

*Tenth.* That said defendant Alonzo L. Jaqua, having conspired as aforesaid with the defendants Judson A. and James B. Jaqua, for the purpose of cheating and defrauding the plaintiffs as aforesaid, has appropriated to his own private use as aforesaid moneys, rights, credits, effects, choses in action and property belonging to said corporation, the sum of ten thousand dollars.

*Eleventh.* That the said defendants Jaqua and Jaqua, having a majority of said stock, and having conspired together as aforesaid to cheat and defraud these plaintiffs and other stockholders aforesaid, refuse to elect any stockholder a director in said corporation who will not agree to elect the said Alonzo L. Jaqua secretary and treasurer of said corporation.

*Twelfth.* That the said defendants Jaqua, Jaqua and Jaqua have failed and refused to collect from persons travelling on said road toll to the amount of one thousand dollars.

*Thirteenth.* That said defendants Jaqua, Jaqua and Jaqua have failed and refused to account to the stockholders of said association for money, credits and effects and property received by them as officers of said corporation.

*Fourteenth.* That said defendants Jaqua, Jaqua and Jaqua, acting as directors of said association, have failed, neglected and refused to establish salaries of the officers of said corporation, have failed, neglected and refused to make and pass ordinances and by-laws as required by law for the govern-

ment of said corporation, and have failed, neglected and refused to make correct financial statements to the recorder of Jay county, as required by law; that all statements that were made and recorded in the recorder's office of Jay county were incorrect and untrue.

*Fifteenth.* That the said defendants Jaqua, Jaqua and Jaqua refuse to bring any suit to compel an accounting by the officers, the secretary and treasurer of said corporation, but knowingly permit the said secretary and treasurer, the defendant, Alonzo L. Jaqua, to absorb, appropriate to his own use and benefit, and divert the income, earnings and profits of said corporation.

*Sixteenth.* That said defendants Jaqua, Jaqua and Jaqua, further conspiring together to cheat and defraud these plaintiffs and other stockholders not named herein, refuse to keep any books and accounts at the toll-houses and toll-stations by the gate-keepers on said road.

*Seventeenth.* That by the articles of association it is required that there should be elected from among the stockholders a board of five directors; that to fulfill such requirement, the said defendants Jaqua, Jaqua and Jaqua cause to be elected, and did elect, the defendants Christopher S. Arthur and Daniel Miller, as directors, well knowing that neither of them would take any part in the business of said corporation, or in the meetings of said board, and that they have wholly failed to have anything to do with the business transactions of said corporation, and knowingly stand by and witness the transactions of the said officers Jaqua, Jaqua and Jaqua, and refuse to bring any suit to compel any accounting from them, or either of them.

*Eighteenth.* That all orders for the payment of money out of the treasury of said corporation has been allowed by the defendants Jaqua, Jaqua and Jaqua, and no other persons.

*Nineteenth.* That the said defendant Alonzo L. Jaqua threatens to allow said gravel road to go down and become out of repair and worthless, and that he threatens to still

absorb and appropriate all of the income and profits of said corporation if he is permitted to keep the control and management of the same.

*Twentieth.* That the defendants James B. and Judson A. Jaqua will, if suffered to do so, continue to keep the said Alonzo L. Jaqua in office as secretary and treasurer for the purpose of absorbing the earnings, income and profits of said corporation, and rendering the stock of these plaintiffs worthless and of no value.

*Twenty-first.* That said Alonzo L. Jaqua threatens, and will, if any judgment is rendered against him or James B. Jaqua in favor of the Wayne Pike Company, to receipt for the same as secretary and treasurer thereof, and absorb and appropriate the same to his own use; that defendant Cornelius Corwin is the owner of one share of stock in said corporation, and is made a party to answer as to his interest.

The second paragraph of the complaint is substantially the same as the first, except that it alleges the misappropriation of the funds of the corporation by Alonzo L. Jaqua, aided and encouraged therein by James B. Jaqua and Judson A. Jaqua.

This complaint was filed on the 20th day of June, 1888. On the 20th day of October, 1888, the appellees filed what it terms a supplemental complaint, which recites the pendency of the action and many of the allegations contained in the first paragraph of the original complaint, and in addition thereto alleges, in substance, that since filing the first paragraph of the complaint the appellants have failed to repair the gravel road, and have suffered the same to become badly out of repair; that some of the culverts have broken down, and that appellants had torn up all the floors of a large bridge across a river on said road, and rendered the same impassable for the period of six weeks; that defendants wholly refuse to repair said road, culverts, or bridge, and say that they do not intend to repair the same; that there is another large bridge on said

road which is greatly out of repair, and has been dangerous for the public to travel over for the period of three months, and is now wholly impassable; that by reason of the condition of said road no tolls can be collected for travel thereon, and that the corporation is in great danger of damage suits, and that the plaintiffs, as stockholders, have no money with which to repair said road.

Prayer that the court appoint a receiver; that he be ordered to repair said road, and that defendants be compelled to pay over to him sufficient of the money in their hands to pay for such repairs.

The court overruled a motion to strike out the supplemental complaint.

The supplemental complaint constitutes a part of the original complaint, and does not supersede it, but they both stand, and constitute the complaint in the cause. *Farris* v. *Jones*, 112 Ind. 498.

The court overruled a demurrer to each paragraph of the above complaint. The assignment of errors calls in question the propriety of this ruling.

Passing, without special mention, numerous objections to the complaint, of a technical character, which, under the provisions of section 398, R. S. 1881, we are bound to disregard, we come to the objections of a more substantial character.

It is earnestly contended, and ably maintained by plausible argument, as well as by the citation of numerous authorities, that each paragraph of the complaint is fatally defective by reason of the failure to allege that the appellees, before the commencement of this suit, made a demand upon the directors of the corporation, while in session, to bring the suit in the name of the corporation.

Conceding that the cases are numerous in which such demand is necessary, we do not think this case belongs to that class. In this case something more than a mere accounting is sought, namely, the appointment of a receiver to take

charge of the corporate property. The parties out of whose hands it is proposed to take the management of the affairs of the corporation, and who are called upon to account for a misappropriation and conversion of the corporation assets, constitute a majority of the directors. It would not be reasonable to require those who are charged with a conversion of the assets, to bring suit in the name of the corporation against themselves, and to furnish the proof to sustain the charge, and at the same time ask the court to take the property from their charge on account of their misconduct. Such a suit would be a farce, and it would be beyond reason to refuse the appellees relief because they did not demand that such a proceeding be had before they commenced their suit.

Cook on Stocks and Stockholders, section 741, in treating this subject, says: "There are occasions when the allegation that the stockholder has requested the directors to bring suit and they have refused, may be omitted, since the request itself is not required. This occurs when the corporate management is under the control of the guilty parties. No request need then be made or alleged, since the guilty parties would not comply with the request; and even if they did the court would not allow them to conduct the suit against themselves." The author cites many authorities which fully support the text.

Mr. Waterman, in his work on Corporations, vol. 1, page 467, says: "The corporation may call its officers to account if they wilfully abuse their trust or misapply the funds of the company; and if it refuses to sue, or is still under the control of those who must be made defendants in the suit, the stockholders, who are the real parties in interest, may file a bill in their own names, making the corporation a party defendant, or part of them may file a bill in behalf of themselves and all others standing in the same relation."

Where a majority of the stock of a corporation is held by

one family who vote away the corporation profits for salaries, a court of equity will remedy the fraud. Cook Stock and Stockholders, section 657.

In the case of *Carter* v. *Ford, etc., Co.,* 85 Ind. 180, it was held that where the corporation was in the hands of its enemies the stockholders might maintain an action, which, if successful, would enure to the benefit of the corporation. See, also, *Rogers* v. *Lafayette, etc., Works,* 52 Ind. 296.

The officers of a corporation are its agents, and they are governed by the rules of law applicable to other agents, as between themselves and their principal, in so far as such rules relate to honesty and fair dealing in the management of the affairs of their principal. They can no more use the business of their principal for their own private gain than any other agent, and should they do so they should be held to the same strict rule of accountability as the agent of a private person. *Port* v. *Russell,* 36 Ind. 60; *Aberdeen Railway Co.* v. *Blakie,* 1 Macq. 461; *Michoud* v. *Girod,* 4 How. 502; *Cumberland, etc., Co.* v. *Sherman,* 30 Barb. 553.

If the appellants conspired together for the purposes alleged in the complaint, each became liable for any act done by any one of the three in furtherance of the common design.

By the act of conspiring together the conspirators assumed to themselves the attribute of individuality, so far as regards the prosecution of the common design, thus rendering what was said or done by any one, in furtherance of the design, the act of all. *Walls* v. *State,* 125 Ind. 400 ; 3 Greenleaf Evidence, section 94.

In our opinion each paragraph of the complaint states a cause of action, and the court did not err in overruling a demurrer thereto.

Each of the appellants filed a separate answer, in which he averred that the appellees did not demand of the directors of the corporation that suit be instituted in the name of the

corporation before the commencement of this suit. To these answers the court sustained a demurrer.

What we have already said disposes of the principal question here presented.

It is contended, however, that the demurrer was so defective in form that it should have been disregarded by the court. Assuming this to be true, the error of the court, if there exists an error, was one which did not harm the appellants.

The answers were wholly insufficient to bar the right of action set up in the complaint, and for that reason the appellants were not harmed by sustaining a demurrer thereto, though the demurrer may have been defective in form.

A trial of the cause by the court resulted in a finding and judgment in favor of the appellees, and a decree appointing a receiver, and ordering the property of the corporation sold and the proceeds divided among the stockholders.

It is insisted by the appellants that the finding of the court is not sustained by the evidence. It is true there is no direct evidence upon the subject of the conspiracy charged in the complaint, but the evidence in proof of a conspiracy will, generally, from the nature of the case, be circumstantial. 3 Greenleaf Evidence, section 93.

We can not say the court was not authorized to find from the evidence in the cause that there was a common design on the part of the appellants to absorb a large portion of the income of the corporation by the allowance of a salary to the secretary and treasurer, which was, by the court, under the evidence, found to be exorbitant.

We can not, under the well-known rules of this court, disturb the finding on the evidence.

It is further contended by the appellants that the damages assessed by the court were too large. This contention is based upon the fact that the court allowed interest on the amount, or a portion of the amount, appropriated or used by the appellants.

The Wayne Pike Company *v.* Hammons *et al.*

The argument is that the money received by the treasurer belonged to him, and that he had the right to use it so long as he furnished the amount due when called upon to do so.

The argument is based upon false premises. The treasurer of a private corporation does not bear that relation to the funds which come into his hands sustained by a public officer. A public officer, when called upon to account for moneys which come into his hands, as such, can not excuse himself on the ground that the funds have been stolen, or destroyed, without his fault, because, by legal fiction, the money is supposed to belong to him, and he must bear the loss. Such fiction is thought to be necessary for the safety of the public funds. But it is not so with the treasurer, or agent, of a private corporation. If the funds in his hands are lost, or destroyed, without his fault, the loss is the loss of the principal, and not the loss of the treasurer, or agent. *Mowbray* v. *Antrim*, 123 Ind. 24.

A large portion of funds involved in this suit was allowed to the secretary and treasurer as salary, and presumably he used the sum so allowed him. The court found that such salary was exorbitant and unreasonable, and required the appellants to account for all the funds used in that way over and above a reasonable compensation for the services of the secretary and treasurer.

If these funds were used, we know of no good reason why those who used them should not account for interest. We do not think the court erred in charging the appellants with interest on the funds which came into their hands, and which were used by the secretary and treasurer, in his private business, under the guise of an exorbitant salary.

Nor do we think the court erred in appointing a receiver in this case. The power to make such appointment is conferred by the 7th clause of section 1222, R. S. 1881. *Connelly* v. *Dickson*, 76 Ind. 440 ; *Hellebush* v. *Blake*, 119 Ind. 349.

Indeed, it was a case eminently proper for the exercise of such power. Those who owned the majority of the stock in

the corporation, and were able by reason of that fact to control the road, seem to have been derelict in the matter of repairs, thus endangering the rights of the other interested parties, and rendering the property non-productive. Under these circumstances it was the duty of the court, when asked to do so, to take such steps as would secure to the minority stockholders their rights in the property, and we know of no means by which this could be accomplished except by the appointment of a receiver.

It is insisted that the court trying this cause had no power or jurisdiction to try and dispose of the same. The cause was tried before the Hon. A. A. Chapin, a special judge appointed by the regular judge of the Jay Circuit Court, to try and dispose of the same.

The record discloses the fact that the parties to this suit entered upon the trial of the cause, by agreement, on the 9th day of January, 1889, the same being the twenty-eighth judicial day of the December term of the court. The trial was continued from day to day until and including the 12th day of January, when the taking of further evidence was adjourned, without fixing a definite day upon which the trial should be resumed.

On the 19th day of January, 1889, the same being the last day of the December term of the court in Jay county, the court adjourned the further hearing of the cause until the 12th day of February. On the 12th day of February the trial was resumed and proceeded to final judgment.

At the time the further hearing of the cause was adjourned from the 19th day of January until 12th day of February, the appellants objected, and their objection being overruled, they filed a proper bill of exceptions. So, on the 12th day of February, at the proper time, they objected to proceeding with the trial, but the court held that the objection was not well taken, and they again excepted. No notice of an adjourned term of court was given.

In our opinion this was not an adjourned term under the

provisions of sections 1333 and 1380, R. S. 1881, but it was a continuation of the existing term under the provisions of section 284, Elliott's Supplement, and, therefore, no notice was necessary.

Section 284, *supra*, provides that "If at the expiration of the time fixed by law for the continuance of the term of any court, the trial of a cause shall be progressing, said court may continue its sitting beyond such time, and require the attendance of the jury and witnesses, and do, transact and enforce all other matters which shall be necessary for the determination of such cause ; and in such case, the term of said court shall not be deemed to be ended until the cause shall have been fully disposed of by the court."

As said in the case of *Perkins* v. *Hayward*, 124 Ind. 445, "The special judge did not fix a term of court ; he did no more than continue a trial regularly entered upon at a term fixed by law."

Nor do we think the objection that the trial was not continued from day to day is well taken. To hold that the court would lose jurisdiction over the cause by a failure to continue in the trial from day to day might defeat the evident intention of Legislature in the passage of this statute. The intention evidently was to save to parties and litigants in court the expense of twice investigating the same matter, and of calling witnesses for that purpose.

In a protracted trial it may become necessary to adjourn for a given period on account of the illness of the presiding judge, or the illness of one of the parties to the cause, or on account of the inability of a witness to attend, or some other cause ; and to hold that the adjournment to a given day on account of one of these causes, or for any other sufficient reason, would defeat the jurisdiction of the court would, we think, defeat the purpose of this statute. The record does not disclose the reason for adjourning the trial from the 19th day of January to the 12th day of February, but, as everything is presumed to have been rightly done in court, we

must presume there was some sufficient reason for such adjournment.

At the proper time the appellants moved the court to modify the decree in this case by striking therefrom so much as orders a sale of the corporate property. The motion was overruled, and the appellants excepted.

We think the court erred in overruling this motion. There was no issue in the cause upon which such an order could be based.

By their complaint the appellees sought nothing· further than an accounting and the appointment of a receiver, and they were not entitled to more than they sought. Neither party in the pleadings seeks a sale of the corporate property. A decree of a court as to a matter not involved in the issues in the cause is erroneous. *McFadden* v. *Ross,* 108 Ind. 512; *Ringgenberg* v. *Hartman,* 124 Ind. 186.

Many other questions of minor importance have been argued by counsel in their able briefs in this cause, which have been duly considered, but the questions here decided are the controlling questions in the cause. No good purpose would be subserved by setting out in this opinion questions which do not control its decision.

So much of the decree of the circuit court as orders a sale of the corporate property is reversed, at the costs of the appellees. The judgment and decree of the circuit court in all other matters is affirmed.

Filed April 29, 1891; petition for a rehearing overruled Oct. 17, 1891.